# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES LAKE,** | Case No. 3:21-cv-601-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **JAMES ESPOSITO, LAWRENCE LONERGAN, KEVIN MCDOWELL, VALAIS VENTURES LLC, and ACACIA SYSTEMS LLC,** | |
| Defendants. | |

B. Scott Whipple, WHIPPLE LAW OFFICE, LLC, 1675 SW Marlow Avenue, Suite 201 Portland, OR 97225; Andrew L. Paris, ANDREW PARIS LAW, 1500 SW First Avenue, Suite 1170, Portland, OR 97210. Of Attorneys for Plaintiff.

James Esposito, Defendant *pro se*.

Lawrence Lonergan, Defendant *pro se*.

Kevin McDowell, Defendant *pro se*.

**Michael H. Simon, District Judge.**

James Lake brings this action against James Esposito, Lawrence Lonergan, Kevin

McDowell, Valais Ventures LLC (Valais), and Acacia Systems LLC (Acacia) (collectively,

PAGE 1 – OPINION AND ORDER

Defendants).[1] Lake's claims arise from events related to his membership in and subsequent buy-out from Valais, a cannabis-related business venture. Esposito and McDowell were members of Valais; Lonergan, an attorney, was allegedly involved in the formation of Valais and the subsequent buy-out of Lake's membership interest; Acacia allegedly contracted to purchase Lake's membership interest.

Before the Court is Lonergan's Motion to Dismiss. Lonergan seeks dismissal, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, of the following claims alleged in Lake's Second Amended Complaint (SAC): (1) violations of the Oregon Securities Law (First and Second Claims); (2) fraud (Third Claim); and (3) elder financial abuse (Eighth Claim). For the reasons explained below, the Court grants in part Lonergan's motion.

## STANDARDS

### A.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

---

[1] On August 14, 2023, the Court issued an Order granting a motion to withdraw filed by then-counsel of record for all Defendants. *See* ECF 68. In that Order, the Court reminded Defendants that Valais Ventures LLC and Acacia Systems LLC may only appear through an attorney admitted to practice in Oregon, and granted a 60-day continuance for those Defendants to obtain substitute counsel or face potential entry of default. As of the date of this Opinion and Order, the Court has not received a notice of appearance from substitute counsel for either Defendant or any request from Lake for default.

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## B. Claims of Fraud Under Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure applies a heightened particularity requirement to claims of fraud: the pleader must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988). That is, "[a]verments of fraud must be accompanied by the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation

marks omitted). When fraud is not an essential element of a claim, the heightened pleading

standard nonetheless applies to allegations of fraud pled in support of that claim. *Id.* at 1105. In

such a case, "if particular averments of fraud are insufficiently pled under Rule 9(b), a district

court should 'disregard' those averments, or 'strip' them from the claim," and then examine any

remaining allegations "to determine whether they state a claim." *Id.* However, if a plaintiff

alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as

the basis of a claim," that claim "is said to be 'grounded in fraud' or to 'sound in fraud,' and the

pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.*

at 1103-04.

## BACKGROUND[2]

This case arises from events involving Lake's investment and membership interest in and

buy-out from Valais, a cannabis-related business venture. Beginning in approximately

January 2018, Esposito and Lonergan approached Lake, seeking investment in hemp and

cannabis-related business ventures. SAC (ECF 69) ¶ 8. During a meeting between Lake and

Esposito that occurred around August 2018, Esposito described a budget and business plan for a

proposed business venture that would involve production of hemp distillate and cannabidiol (or

CBD) isolate. *Id.* ¶ 9. During those meetings and in related communications, Esposito professed

---

[2] Because Lonergan seeks dismissal of Lake's claims only as brought against Lonergan, the Court discusses only those allegations in the SAC that are relevant to those claims or that otherwise provide relevant background. For the same reason, nothing in this Opinion and Order alters those claims as brought against any other Defendant.

In his Response, Lake asserts additional facts in support of his claims. Those new assertions, however, are not properly considered when ruling on a motion to dismiss under Rule 12(b)(6). *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis omitted)).

his expertise and experience in producing hemp distillate and CBD isolate. *Id.* The budget called for funding of approximately $150,000 for the business—a sum that, according to Esposito, would be sufficient for the business to be self-sustaining without further investment except to scale up. *Id.* Lake provided $150,000 as a loan in exchange for a membership interest in Valais, which was to produce the cannabis-related products. *Id.* In addition to Lake and Esposito, the members of Valais included McDowell, and Steinhauser (a third party who is not named in this suit). Several months after Lake invested an initial $150,000, Valais had failed to produce any product. *Id.* ¶ 10. Esposito requested further funding, and Lake loaned Valais $127,000, bringing his total "investment" to $277,000. *Id.*

In November 2018, Lake and Esposito reached a verbal agreement under which Valais would buy out Lake's total interest in Valais for $700,000. *Id.* ¶ 11. Of that sum, $100,000 was to be paid immediately and $600,000 was to be paid from Valais's future revenues, with priority given to Lake over the other owners. *Id.* Lake and Esposito agreed that Lake would keep his membership interest in Valais until he had been paid in full. *Id.* On approximately November 30, 2018, Lake and Esposito signed a contract titled "Membership Unit Purchase Agreement" (Purchase Agreement) under which Lake would sell his membership in Valais for $600,000 to Acacia, a limited liability company owned at least in part by Esposito. *Id.* ¶¶ 7, 12. Shortly thereafter, Lonergan contacted Lake and stated that he was the attorney representing Esposito and Steinhauser in "the 'buy-out' matter." *Id.* ¶ 13. Lonergan explained that he sought clarification on some terms in the Purchase Agreement. *Id.* Lonergan and Lake also discussed modifying some of the terms in the Purchase Agreement "post-execution." *Id.*

In January 2019, Lonergan represented to Lake that the Valais facility was operating and repeatedly reassured Lake that payment was forthcoming. *Id.* ¶ 15-16. In March and April,

Lonergan stated that he would use his attorney-client trust account as escrow to ensure that Lonergan would be paid "the initial $100,000." *Id.*

Lake signed "the agreements"[3] and sent Lonergan wiring instructions so that Lonergan could send Lake the initial $100,000. *Id.* ¶ 17 Lonergan, however, stated that he needed to transfer the $100,000 back to Valais to pay other bills. *Id.* Lonergan then insisted that Lake agree to a revised contract, under which Lake would release his membership interest in Valais in exchange for: (1) becoming a senior secured creditor of Valais with UCC security interests in the Valais equipment, and (2) $600,000 in payments to be made to Lake in November 2019, from the proceeds of Valais's business activities. *Id.* ¶¶ 17-18. Lake agreed. *Id.* ¶ 17.

The new agreement was memorialized in part by the signing of a Senior Secured Convertible Promissory Note (Promissory Note). *Id.* ¶ 19.[4] Before Lake signed the final version of the Promissory Note, the parties had discussed requiring Lake to sign a general release. Defendants wanted Lake to sign a unilateral release, but Lake agreed to execute a release only if it were mutual. *Id.* ¶ 20. Before Lonergan delivered to Lake the final version of the Promissory Note, Lonergan inserted text requiring Lake to sign a unilateral release, without informing Lake that he had done so. *Id.* Lake signed the Promissory Note on May 8, 2018; on May 13th, Esposito, on behalf of Valais, countersigned. *Id.* ¶ 19, 20.

---

[3] It is not always clear from the allegations in the SAC which contract(s) or agreement(s) are being referenced and whether the referenced agreement(s) or contract(s) were in fact modified (and, if so, when). Paragraph 17 of the SAC refers to "agreements," but it is unclear what agreement, other than an amended version of the Purchase Agreement, Lake would have signed at that time.

[4] Lake attached to his original Complaint a copy of the Promissory Note, which is dated May 8, 2019, and is signed by Esposito (on behalf of Valais) and Lake. Lonergan does not dispute the authenticity of the copy—in fact, he relies on it in his motion to dismiss. *See infra* note 6.

PAGE 6 – OPINION AND ORDER

Although Lake never signed the separate release,[5] all parties proceeded as if the Promissory Note was nonetheless valid and enforceable. *Id.* Contemporaneously with Esposito's signing of the Promissory Note on behalf of Valais, Valais executed a security agreement in its equipment, for which the UCC forms were filed several months later. *Id.* The parties also signed an LLC resolution whereby Lake released his membership interest in Valais. *Id.*

Lake alleges that from approximately April 2019—before the parties signed the Promissory Note—through November 2019, Lonergan made multiple representations to Lake that Valais was on the cusp of profitability, that periodic payments would soon be made to Lake as a showing of good faith, and that payment was assured. *Id.* ¶ 21. No payment, however, was ever made to Lake under any agreement. *Id.*

In 2020, Lake discovered that Esposito, McDowell, and Lonergan were operating other businesses that they owned, at the same location as Valais, and they were using Valais's equipment. *Id.* ¶¶ 22, 82. Lake filed this case in April 2021.

## DISCUSSION[6]

### A.  Sale of Securities in Violation of Or. Rev. Stat. § 59.115

In his First Claim, brought against Esposito, McDowell, Lonergan, and Valais, Lake asserts three separate counts of selling securities in violation of Oregon law. In Count One of the

---

[5] The SAC does not expressly state that Lake never signed the release, but that fact can be inferred from the allegations as set forth in the SAC, and Lake concedes that fact in his Response. *See* ECF 76 at 4-5.

[6] Lonergan includes within his motion to dismiss a Declaration referencing several documents that Lake has submitted in this case and a complaint that Lake filed in a different case, and he attaches those documents to his motion. *See* ECF 75 at 2; *id.* at 28-149. As a general rule, a court may not consider extrinsic evidence on a motion to dismiss under Rule 12(b)(6) unless the court converts the motion to a motion for summary judgment and gives the nonmoving party an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). The Ninth Circuit, however, has identified three exceptions to that general rule. First,

First Claim, Lake alleges that those Defendants unlawfully solicited the sale of and sold to Lake an unregistered security—a membership interest in Valais. In Count Two, Lake alleges fraud in the sale the membership interest in Valais. In Count Three, Lake alleges the sale of a second unregistered security—the Promissory Note, which was used to buy out Lake from his interest in Valais.[7] Lake brings all three Counts of his First Claim under Oregon Revised Statutes (ORS) § 59.115, which imposes liability in connection with the sale or successful solicitation of sale of securities under specified circumstances.[8]

---

under Rule 201 of the Federal Rules of Evidence, "a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quotation marks omitted). Second, "a court may consider material which is properly submitted as part of the complaint." *Id.* at 688 (quotation marks omitted). Third, a court may consider other documents provided that the authenticity of those documents is uncontested "and the plaintiff's complaint necessarily relies on them." *Id.* at 688 (quotation marks omitted); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018) (describing the incorporation-by-reference exception to the consideration of extrinsic evidence). A court, however, "cannot take judicial notice of disputed facts contained in . . . public records." *Khoja*, 899 F.3d at 999. Further, although incorporation "generally permits courts to accept the truth of matters asserted in incorporated documents, . . . it is improper to do so only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint." *Id.* at 1014.

Lake does not dispute the authenticity of the documents on which Lonergan relies. Outside of evidence that falls within the above exceptions, however, to the extent that Lonergan relies on extrinsic evidence to dispute material facts, the Court does not consider that evidence or Lonergan's related factual assertions but looks instead to the well-pleaded material facts alleged in the SAC.

[7] Lonergan does not dispute that both the membership interest in Valais and the Promissory Note are qualifying securities for purposes of the Oregon Securities Law.

[8] Lake brings all three counts of his First Claim under ORS § 59.115; in Count Two of the First Claim, Lake alleges that the relevant misrepresentations were made "in violation of ORS 59.135," which is cross-referenced (in part) in § 59.115. Section 59.115 imposes liability in connection with the sale or successful solicitation of the sale of a security in specified circumstances, including certain violations of § 59.135. Thus, Count Two of the First Claim is a claim for *liability* under § 59.115, based on *violations* of § 59.135. *See* ORS § 59.115(1)(b). It is unclear from the SAC, however, under which subsection(s) of § 59.135 Lake intends to assert Count Two. *See* SAC ¶ 30. Further complicating matters, § 59.115 does not reference the specific subsection of § 59.135 that appears most likely to apply in this case—namely,

In Counts One and Two, Lake alleges that Lonergan, along with Esposito, McDowell, and Valais, "sold and successfully solicited the sale" to Lake of the membership interest in Valais; under Count Two, Lake adds that the sale was through the misrepresentations alleged in Paragraph 23 of the SAC. As relevant to Counts One and Two, ORS § 59.115 provides, with limited exceptions not relevant here, that a person is liable to the purchaser of a security if the person: (1) "[s]ells or successfully solicits the sale of a security . . . in violation of the Oregon Securities Law"; (2) "[s]ells or successfully solicits the sale of a security" by unlawful acts of fraud or deceit, including material misrepresentations or material omissions; or (3) "participates or materially aids in" an unlawful sale. *Id.* (1)(a)-(b), (3).[9] As relevant to Count One, the Oregon Securities Law includes § 59.055, which makes unlawful (with limited exceptions) the sale of any unregistered security in Oregon.

The allegations in the SAC are insufficient to show *Lonergan's* liability under § 59.115 for his solicitation of the sale to Lake of a membership interest in Valais—or even for his participation or material aid in that sale. The only allegation about Lonergan that is specific to the sale to Lake of a membership interest in Valais is the allegation that "[b]eginning approximately January 2018, Esposito and Lonergan approached Lake seeking investment in

_____

subsection (2), which makes unlawful material misstatements and material omissions with respect to the sale of a security. The Court recognizes, however, that § 59.135(2) is virtually identical to a portion of § 59.115(1)(b) that imposes liability on a person who sells or successfully solicits the sale of a security "by means of an untrue statement of a material fact" or a material omission. Accordingly, in evaluating the sufficiency of the SAC with respect to Count Two of the First Claim, the Court considers whether Lake has stated a claim under the provisions of § 59.135 cross-referenced within § 59.115(1)(b), and also considers whether Lake has stated a claim under § 59.115(1)(b) based on alleged material misstatements (Lake does not allege that any material *omissions* are relevant to Count Two).

[9] "Person" may include an attorney that participates in or materially aids the sale of a security. *See generally Prince v. Brydon*, 307 Or. 146 (1988).

various hemp and cannabis-related business ventures." SAC ¶ 8. That is not a sufficiently specific allegation to demonstrate Lonergan's potential liability under § 59.115 for his involvement in the sale of the membership interest. Some of the alleged misrepresentations in Paragraph 23 could provide support for Count One, in addition to providing support for Count Two, but the allegations in Paragraph 23 are too general to state a claim against Lonergan as to either Count.[10] They do not identify which Defendant made the listed statements, or when. The SAC fails to state a claim against Lonergan in Counts One and Two of the First Claim based on his alleged involvement in the sale of a membership interest in Valais.

Count Three of the First Claim involves the alleged unlawful sale of an unregistered security—the Promissory Note, which was used to buy out Lake from his interest in Valais. *See* ORS § 59.015(19) (defining "security" for purposes of the Oregon Securities Law); *id.* § 59.055

---

[10] In Paragraph 23 of the SAC, Lake lists several categories of "misrepresentations of facts related to the sale of securities to [Lake]," including statements about Esposito's and McDowell's "experience and industry know-how" and the required investment for Valais to become profitable, and both statements could support Counts One and Two. In Paragraph 23, however, Lake does not allege when the listed statements were made and attributes the statements only to "Defendants" generally. With respect to both Counts One and Two, those general allegations are insufficient to satisfy the pleading requirements of either Rule 8 or Rule 9(b). *See, e.g.*, *McKeon v. Cent. Valley Cmty. Sports Found.*, 2018 WL 6436256, at *4 (E.D. Cal. Dec. 7, 2018) (explaining that a complaint may be factually deficient when it "lumps defendants together and fails to adequately distinguish claims and alleged wrongs among defendants," and that a plaintiff "must allege more than generic and conclusory allegations demonstrating that 'Defendants' collectively engaged in [misconduct]" and must "allege with at least some degree of specificity the acts which each defendant is alleged to have engaged in which support Plaintiff's claims" (collecting cases)); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." (quotation marks omitted)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (cleaned up)). If Lake elects to file a third amended complaint, he must ensure that his claims satisfy the pleading standard of Rule 8 and, when applicable, the heightened standard of Rule 9(b)).

(making it unlawful to sell any unregistered security, with limited exceptions). At this stage in the litigation, Lake has alleged facts sufficient to show that Lonergan "participate[d] or materially aid[ed]," *see id.* § 59.115(1)(a), (3), in the sale of that security. Lake alleges that Lonergan drafted the Promissory Note, exchanged drafts of the Promissory Note with Lake, and negotiated its terms. Accordingly, the Court declines to dismiss Count Three of the First Claim as asserted against Lonergan.

**B. Sale of Securities in Violation of Or. Rev. Stat. § 59.137**

In his Second Claim, asserted against Esposito, McDowell, Lonergan, and Valais, Lake alleges that Lonergan, Esposito and McDowell are liable under ORS § 59.137. Specifically, Lake alleges that Lonergan materially aided Esposito's and McDowell's violations of § 59.135 (which is cross-referenced in § 59.137) by drafting legal documents used in connection with Lake's purchase and sale of securities related to Valais, including the operating agreement for Valais and the Promissory Note. Lake also alleges that Lonergan, along with Esposito and McDowell, was operating the separate businesses of Insupply Labs, LLC and Sanilux Brands, LLC, out of the Valais location and using the Valais equipment, but never disclosed this material information to Lake.

ORS § 59.137 imposes liability on "[a]ny person who violates or materially aids in a violation of ORS § 59.135(1), (2)[,] or (3)." Section 59.135, in relevant part, makes it unlawful "for any person, directly or indirectly, in connection with the . . . sale of any security":

> (1) To employ any device, scheme or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; [or]
>
> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person[.]

The allegations regarding Lonergan's omission of material facts and drafting of legal documents related to Lake's purchase and sale of securities, including the operating agreement and Promissory Note, are sufficient to state a claim against Lonergan under § 59.137. *See Prince v. Brydon*, 307 Or. 146, 149-51 (1988) (holding that an attorney can "materially aid" in the sale of a security under § 59.115(3) and may be held liable even if that attorney lacks knowledge of the unlawfulness of that sale). Accordingly, the Court declines to dismiss the Second Claim as asserted against Lonergan.

**C. Common Law Fraud**

In his Third Claim, for common law fraud, Lake alleges, first, that Esposito, McDowell, and Lonergan made material misrepresentations and omissions to induce Lake to invest in Valais. Second, Lake alleges that those Defendants fraudulently sought to induce him to enter into a release that would shield those Defendants from personal liability for their earlier misrepresentations—*i.e.*, by inserting language into the Promissory Note requiring that release, without informing Lake.[11]

Under Oregon law, the "essential elements" of a common-law fraud claim are: (1) "the defendant made a material misrepresentation that was false"; (2) "the defendant did so knowing that the representation was false"; (3) "the defendant intended the plaintiff to rely on the misrepresentation"; (4) "the plaintiff justifiably relied on the misrepresentation"; and (5) "the

---

[11] Lake alleges common-law fraud against Esposito, McDowell, and Lonergan based in their "attempt to induce [Lake] to enter into a release to isolate them individually from personal liability for their misrepresentations and omissions." SAC ¶ 49. Based on Lake's arguments in his Response, the Court understands Lake to allege harm from the fraudulent acts that induced Lake to sign of the Promissory Note—acts that included surreptitiously inserting into the Promissory Note a clause requiring a general release.

plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Or.*, 350

Or. 336, 351-52, *adhered to on reconsideration*, 350 Or. 521 (2011).

Especially in light of Rule 9(b)'s heightened pleading requirement, the limited allegations

about Lonergan (and unspecified "Defendants") are insufficient to demonstrate Lonergan's

liability for fraud with respect any representations purportedly made to induce Lake to invest in

Valais. Lake, however, alleges sufficient facts at this stage of the litigation that Lonergan

fraudulently concealed the clause in the Promissory Note requiring a general release, and that

Lonergan misrepresented Valais' ongoing financial condition to induce Lonergan to release his

interest in Valais and accept the Promissory Note. In addition, Lake has alleged sufficient facts

to show that Lonergan concealed material facts about the other businesses being operated by

Lonergan, Esposito, and McDowell. *See Gregory v. Novak*, 121 Or. App. 651, 655 (1993)

("[O]ne who makes a representation that is misleading because it is in the nature of a 'half-truth'

assumes the obligation to make a full and fair disclosure of the whole truth.").

**D.  Elder Financial Abuse**

Lake asserts his Eighth Claim, for elder financial abuse in violation of ORS § 124.100 *et

seq.*, against Esposito, McDowell, Lonergan, and Valais. In support of that claim, Lake alleges,

first, that those Defendants "wrongfully appropriated approximately $277,000 in investment

funds from Lake by making fraudulent and false statements of fact about the investment needed

to make Valais Ventures profitable" and wrongfully used those funds for the benefit of other

business owned by Esposito, McDowell, and Lonergan, "to the exclusion of Lake." Second,

Lake alleges that all four Defendants wrongfully withheld $600,000 owed to Lake in connection

with his sale of his membership interest in Valais.

Under ORS § 124.110(1)(a), elder financial abuse occurs "[w]hen a person wrongfully

takes or appropriates money or property of a vulnerable person, without regard to whether the

PAGE 13 – OPINION AND ORDER

person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person." *See Gibson v. Bankofier*, 275 Or. App. 257, 268 (2015) (setting forth elements of an elder financial abuse claim). Lonergan does not dispute that Lake, who alleges that he is over the age of 65, is a "vulnerable person" within the meaning of § 124.110. *See* ORS § 124.100(1)(a), (1)(e)(A) (defining "[v]ulnerable person" to include a person 65 years of age or older).[12]

 For the same reasons the Court finds that the SAC does not allege facts sufficient to demonstrate Lonergan's liability with respect to Counts One and Two of the First Claim (involving the sale of the membership interest in violation of the Oregon Securities Law) the SAC does not sufficiently allege an elder abuse claim with respect to Lake's investment in Valais. At this stage of the litigation, however, Lake sufficiently alleges elder abuse based on the allegations that: (1) Lonergan omitted to disclose the material fact about the joint businesses owned in part by Lonergan that were operating out of Valais' location and using Valais' equipment; (2) Lonergan allegedly misrepresented Valais' financial and operating condition to induce Lake to release his interest in Valais and accept the Promissory Note; (3) Lonergan drafted those documents; and (4) the Promissory Note contained a provision not previously agreed to by Lake. *Cf. Cruze v. Hudler*, 246 Or. App. 649, 659, 666 (2011) (reversing grant of summary judgment in favor of an attorney on elder abuse claim where attorney drafted an agreement that included a misrepresentation, had joint ventures with the alleged bad actor party

---

[12] As Lake points out in his Response, under ORS § 124.100(5) a person may bring an action against a person "for *permitting* another person to engage in . . . financial abuse if the person knowingly acts or fails to act under circumstances in which a reasonable person should have known of the physical or financial abuse" (emphasis added). In his Eighth Claim, however, Lake does not assert that theory, and the Eighth Claim references only actions taken by Lonergan involving direct appropriation and withholding of funds from Lake—not actions of "permitting" another to do so. *See* SAC ¶¶ 82-83.

to the agreement, knew the bad actor had a history of "stealing" to keep the joint ventures afloat, and knew the joint ventures needed money), *adhered to as modified on reconsideration*, 248 Or. App. 180 (2012). Accordingly, the Court denies Lonergan's motion to dismiss Plaintiff's Eighth Claim.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant Lonergan's Motion to Dismiss (ECF 75). The Court: (1) dismisses Count One of the First Claim as asserted against Lonergan; (2) dismisses Count Two of the First Claim as asserted against Lonergan; (3) declines to dismiss Count Three of the First Claim as asserted against Lonergan; (4) declines to dismiss the Second Claim as asserted against Lonergan; (5) declines to dismiss the Third Claim as asserted against Lonergan; (6) declines to dismiss the Eighth Claim as asserted against Lonergan. If Plaintiff believes he can cure the deficiencies in the Second Amended Complaint as identified in this Opinion and Order, Plaintiff may file a Third Amended Complaint within two weeks of the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 20th day of March, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge