**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**JAMES LAKE**,

        Plaintiff,

    v.

**VALAIS VENTURES, LLC,** and **ACACIA SYSTEMS, LLC**,

        Defendants.

---

**VALAIS VENTURES, LLC**,

        Counterclaim Plaintiff,

    v.

**JAMES LAKE**,

        Counterclaim Defendant.

Case No. 3:21-cv-601-SI

**OPINION AND ORDER**

B. Scott Whipple, WHIPPLE LAW OFFICE, LLC, 1675 SW Marlow Ave., Suite 201, Portland, OR 97225; and Andrew L. Paris, ANDREW PARIS LAW, 1500 SW First Ave., Suite 1170, Portland, OR 97210. Of Attorneys for Plaintiff/Counterclaim Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff and Counterclaim Defendant James Lake ("Lake") sues Defendant and

Counterclaim Plaintiff Valais Ventures, LLC ("Valais") and Defendant Acacia Systems LLC

("Acacia").[1] Lake alleges breach of contract against Valais and Acacia, and alleges violations of

Oregon securities law, elder financial abuse in violation of Oregon Revised Statutes ("ORS")

§ 124.100, unjust enrichment, promissory estoppel, breach of implied covenant of good faith and

fair dealing, and fraudulent filing of information returns against Valais.[2] Valais and Acacia were

originally represented by counsel, but counsel withdrew on August 14, 2023. ECF 68. Valais and

Acacia did not obtain replacement legal counsel as ordered by the Court, *id.*, and Lake moved for

entry of default against Valais and Acacia, ECF 80, which the Court granted, ECF 81. Lake now

moves for default judgment against Valais and Acacia. ECF 93. Against Valais, Lake seeks

$1,440,000 in damages, prejudgment interest, postjudgment interest, and attorney's fees of

$91,478. *Id.* Against Acacia, Lake seeks $240,000 in damages, prejudgment interest, and

postjudgment interest. *Id.* For the following reasons, the Court grants in part and denies in part

Lake's motion.

## STANDARDS

**A.  Default Judgment**

Under Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of the Court is

required to enter an order of default if a party against whom affirmative relief is sought fails

timely to answer or otherwise defend an action. Fed. R. Civ. P. 55(a) ("When a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

---

[1] Lake also sued James Esposito, Lawrence Lonergan, Kevin McDowell, InSupply Labs, LLC, Sanilux Brands, John Does 1-6, and XYZ Corporations 1-6. All other Defendants have been dismissed, and Valais and Acacia are the sole remaining Defendants.

[2] Lake clarifies in his motion for default judgment that his claims against Valais other than breach of contract, violation of Oregon securities law, and elder financial abuse are pled in the alternative to breach of contract. Because the Court finds that default judgment should be granted against Valais for breach of contract, the Court does not address Lake's claims pled in the alternative.

failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Upon the

entry of default, the Court accepts "the well-pleaded factual allegations" of the complaint "as

true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life

Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)); *see also Geddes v. United Fin.

Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The Court, however, does not accept as admitted facts

that are not well-pleaded, conclusions of law, or facts relating to the amount of damages.

*DIRECTV*, 503 F.3d at 854; *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th

Cir. 2008).

After default has been entered against a defendant, a court may enter a default judgment

against that defendant. *See* Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a

default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980);

*see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 786 (9th Cir. 2011) (noting that a district's court

decision whether to enter a default judgment is reviewed for abuse of discretion). In *Eitel v.

McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set out factors to guide a district

court's consideration of whether to enter a default judgment. *See DIRECTV*, 503 F.3d at 852

(noting that *Eitel* "set[] out factors to guide district court's determination regarding the

appropriateness of granting a default judgment").

The Ninth Circuit in *Eitel* held:

> Factors which may be considered by courts in exercising discretion
> as to the entry of a default judgment include: (1) the possibility of
> prejudice to the plaintiff, (2) the merits of plaintiff's substantive
> claim, (3) the sufficiency of the complaint, (4) the sum of money at
> stake in the action; (5) the possibility of a dispute concerning
> material facts; (6) whether the default was due to excusable
> neglect, and (7) the strong policy underlying the Federal Rules of
> Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 (punctuation in original). The "starting point" of the court's analysis, however, "is the general rule that default judgments are ordinarily disfavored." *Id.* at 1472.

**B.  Claims of Fraud Under Rule 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure applies a heightened particularity requirement to claims of fraud: the pleader must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988). That is, "[a]verments of fraud must be accompanied by the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation marks omitted). When fraud is not an essential element of a claim, the heightened pleading standard nonetheless applies to allegations of fraud pled in support of that claim. *Id.* at 1105. In such a case, "if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim," and then examine any remaining allegations "to determine whether they state a claim." *Id.* If a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," that claim "is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103-04.

**BACKGROUND**

In August 2018, Lake alleges that he purchased a membership interest in Valais for an original investment of $150,000. ECF 69 (Second Amended Complaint ("SAC")) ¶ 9. Lake asserts that he later invested more in Valais, for a total investment of about $277,000. *Id.* ¶ 10. On or about November 30, 2018, Lake executed a contract titled "Membership Unit Purchase Agreement," whereby he was to sell his membership interest in Valais to Acacia for $600,000. *Id.* ¶ 12; ECF 93-1 at 5-13. Lake alleges that Acacia never made this payment. SAC ¶ 12.

Shortly after signing the Membership Unit Purchase Agreement, Lake alleges that he agreed to a revised deal in which Valais would pay Lake $600,000 in November 2019 for Lake's membership interest in Valais. *Id.* ¶¶ 17-18. Valais then allegedly executed a promissory note ("Promissory Note") on or about May 13, 2019, promising to pay $600,000 to Lake by November 19, 2019. *Id.* ¶ 19. Lake asserts that Valais never paid him. *Id.* ¶ 21. Lake also alleges that Defendants made misrepresentations of fact when selling Lake the securities. *Id.* ¶ 23.

Lake moved for entry of default against Valais and Acacia on April 23, 2024, ECF 80, and the Court granted this motion on the same day, ECF 81. Lake then moved for default judgment against Valais and Acacia on May 22, 2024. ECF 84. The Court denied without prejudice this motion for lack of evidence, and granted Lake leave to renew once the claims against the remaining individual Defendants had been resolved. ECF 88. The Court further ordered that Lake dismiss Defendant James Esposito, *id.*, which Lake did, ECF 90. Lake then settled with the two remaining individual Defendants, Kevin McDowell and Lawrence Lonergan, resulting in their voluntary dismissals. ECF 91; ECF 92. Lake now moves again for default judgment against Valais and Acacia, the sole remaining Defendants.

## ANALYSIS

### A. *Eitel* Factors

#### 1. Prejudice

The first factor, the prejudice to Lake if default judgment is not entered, weighs in favor of entry of default judgment because Valais and Acacia's failure to obtain counsel means that "litigation in this case cannot continue." *Williams v. La Perla N. Am., Inc.*, 2024 WL 1974546, at *3 (N.D. Cal. May 3, 2024); *see also United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that when a corporation failed "to retain counsel for the duration of the litigation," it "was perfectly appropriate" to enter default judgment against the corporation).

PAGE 5 – OPINION AND ORDER

### 2. Pleading Claims for Relief

The second factor, the merits of Lake's substantive claims, and the third factor, the sufficiency of his complaint, are addressed together. These factors weigh in favor of default for Lake's claims against Valais for breach of contract and violations of Oregon securities law, ORS §§ 59.055 and 59.115, and weigh against default for Lake's claims against Acacia for breach of contract and against Valais for violations of Oregon securities law, ORS §§ 59.135 and 59.137, and elder financial abuse.

#### a. Breach of Contract

##### i. Choice of Law

A federal court sitting in diversity applies the choice of law rules of Oregon, the forum state. *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012). Under Oregon law, "the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen," subject to enumerated statutory exceptions. ORS § 15.350(1). No exception exists here, and thus the Court applies the laws the parties have chosen. In the contract with Acacia, the parties agreed that New York law applies. ECF 93-1 at 7. In the contract with Valais, the parties agreed that California law applies. *Id.* at 16.

##### ii. Acacia

To plead a claim for breach of contract under New York law, a plaintiff must allege: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins.*, 39 N.Y.3d 44, 52 (2022) (citations omitted). As to the first element, Lake alleges that on or about November 30, 2018, he executed a contract with Acacia in which Acacia agreed to pay Lake $600,000 for Lake's membership units in Valais. SAC ¶ 12. Lake submits this Membership Unit Purchase Agreement as evidence, in which Acacia agreed that it would

pay Lake the $600,000 purchase price upon closing. ECF 93-1 at 5. For the second element,

Lake's obligations under the contract were to deliver to Acacia "a Members' Consent to the

transfer of the Units of the Company and a Resolution executed by an [sic] seller," and to

"concurrently execute the irrevocable Stock Power in the form annexed hereto as Schedule B."

*Id.* Lake alleges that he has "fully performed his obligations under the contract or is otherwise

entitled to enforce the terms of the contract," SAC ¶ 54, but does not provide any further detail

on what he has done to perform these obligations. Lake never alleges that he delivered his

consent to the transfer of his membership interest or that he executed an irrevocable stock power.

Accordingly, his allegation states a legal conclusion that the Court does not credit, *see Ashcroft

v. Iqbal*, 556 U.S. 662, 678-79 (2009), and is insufficient to allege that Lake has performed in

accordance with the contract. Lake has thus not sufficiently alleged his breach of contract claim

against Acacia.

### iii. Valais

To plead a claim for breach of contract under California law, a plaintiff must allege:

"(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v.

Goldman*, 51 Cal. 4th 811, 821 (2011). "Breach or repudiation of a contract by one party excuses

nonperformance by the other." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th

Cir. 2008) (interpreting California contract law).

As to the first element, Lake alleges that on or about May 13, 2019,[3] he executed a

contract with Valais in which Valais agreed to pay Lake $600,000 by November 19, 2019, for

---

[3] The Promissory Note that Lake submits with his Motion for Default Judgment was signed on May 8, 2019. ECF 93-1 at 14-17.

Lake's membership units in Valais. SAC ¶ 19. Lake submits the Promissory Note as evidence. ECF 93-1 at 14-17. Lake has thus sufficiently alleged the existence of a contract. For the second element, Lake's obligation under the contract, "*[u]pon receipt of full payment*," was to provide Valais "with a signed Satisfaction of Note." *Id.* at 14 (first emphasis added). Accordingly, Lake's performance under the contract was only triggered by Valais's performance. Further, Lake could fail to perform, and he would not be in default because the contract provides that if Lake "fails or neglects to provide [Valais] with a Satisfaction of Note despite full payment and due demand thereof, after ten (10) days such written notice is provided, the Note will be deemed satisfied in full." *Id.* Lake alleges that Valais never paid him, and he has thus sufficiently alleged both the second and third elements of breach of contract. SAC ¶ 21. Because of Valais's breach, Lake alleges that he has suffered damages in the amount of $600,000, satisfying the fourth element. The Court thus finds that Lake has sufficiently alleged a breach of contract by Valais.

### b. Oregon Securities Law

Lake alleges that Valais sold a security in violation of Oregon securities law, ORS §§ 59.055 59.115, 59.135, and 59.137. This law makes unlawful, with limited exceptions, the sale of any unregistered security in Oregon. ORS § 59.055. A security includes a note, transferable share, "or, in general, any interest or instrument commonly known as a 'security.'" ORS § 59.015(19)(a).

Section 59.115 provides, with limited exceptions not relevant here, that a person is liable to the purchaser of a security if the person: (1) "[s]ells or successfully solicits the sale of a security . . . in violation of the Oregon Securities Law"; (2) "[s]ells or successfully solicits the sale of a security" by unlawful acts of fraud or deceit, including material misrepresentations or material omissions; or (3) "participates or materially aids in" an unlawful sale. *Id.* (1)(a)-(b), (3).

Section 59.135, in relevant part, makes it unlawful "for any person, directly or indirectly, in connection with the . . . sale of any security":

> (1) To employ any device, scheme or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; [or]
>
> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person[.]

Lake alleges in his SAC, upon information and belief, that his interest in Valais is not a registered security or subject to any exemptions under ORS § 59.055. SAC ¶ 26. Lake also alleges that the Promissory Note that was used to buy out Lake from his interest in Valais was an unregistered security and was not subject to an exemption to registration. *Id.* ¶ 35. In Defendants' response to Lake's interrogatories, Defendants stated that they were not aware of any exemptions to registration of the Valais membership interest that Lake purchased. ECF 93-2 at 13.[4] Accordingly, Lake sufficiently alleges that Valais violated ORS §§ 59.055 and 59.115 by selling an unregistered security in the form of Lake's membership interest and the Promissory Note.

Lake further alleges that Valais made misrepresentations to sell the securities to Lake. SAC ¶¶ 23, 30. Lake does not allege when the listed statements were made and attributes the statements only to "Defendants" generally. Those general allegations are insufficient to satisfy the pleading requirements of either Rule 8 or Rule 9(b) of the Federal Rules of Civil Procedure.

---

[4] Defendants also responded that Lake "never purchased any membership interest in Valais Ventures LLC but rather formed the business himself and made an initial capital contribution along with other members." *Id.* Initial capital contributions can be used to purchase a membership interest; the two are not mutually exclusive. *See In re Campbell*, 490 B.R. 390, 393 (Bankr. D. Ariz. 2013); *RMS NA, Inc. v. RMS (Aus) Pty Ltd.*, 2024 WL 4495515, at *1 (S.D. Cal. Oct. 15, 2024); *Echevarria v. Piccolo*, 2012 WL 523676, at *1 (D. Idaho Feb. 16, 2012).

*See, e.g.*, *McKeon v. Cent. Valley Cmty. Sports Found.*, 2018 WL 6436256, at *4 (E.D. Cal. Dec. 7, 2018) (explaining that a complaint may be factually deficient when it "lumps defendants together and fails to adequately distinguish claims and alleged wrongs among defendants," and that a plaintiff "must allege more than generic and conclusory allegations demonstrating that 'Defendants' collectively engaged in [misconduct]" and must "allege with at least some degree of specificity the acts which each defendant is alleged to have engaged in which support Plaintiff's claims" (collecting cases)); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." (quotation marks omitted)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (cleaned up)). Accordingly, Lake fails to plead a claim under ORS §§ 59.135 and 59.137.

### c. Elder Financial Abuse

Lake alleges that Valais committed elder financial abuse under ORS § 124.100 *et seq.* Oregon law allows an action to be brought for financial abuse of a vulnerable person

> (a) When a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person[, or]
>
> (b) When a vulnerable person requests that another person transfer to the vulnerable person any money or property that the other person holds or controls and that belongs to or is held in express trust, constructive trust or resulting trust for the vulnerable person, and the other person, without good cause, either continues to hold the money or property or fails to state reasonable steps to make the money or property readily available to the vulnerable person when:

(A) The ownership or control of the money or property was acquired in whole or in part by the other person or someone acting in concert with the other person from the vulnerable person; and

(B) The other person acts in bad faith, or knew or should have known of the right of the vulnerable person to have the money or property transferred as requested or otherwise made available to the vulnerable person.

ORS § 124.110(1)(a)-(b). A "vulnerable person" is defined to include an "elderly person," ORS § 124.100(1)(e), and an elderly person is a person 65 years of age or older, ORS § 124.100(1)(a).

Oregon courts have recognized that "there are four elements to a claim for financial abuse of an elderly or incapacitated person [under ORS § 124.110(1)(a)]: There must be (1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful." *Gibson v. Bankofier*, 275 Or. App. 257, 268 (2015) (quotation marks omitted). Oregon courts use the "ordinary" dictionary definition of "take": "to transfer into one's own keeping [or to] enter into or arrange for possession, ownership, or use of." *Church v. Woods*, 190 Or. App. 112, 117 (2003) (alteration in original). Oregon courts define "wrongful" as being "in pursuit of an improper motive or by improper means. A defendant's motives or means may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession." *Gibson*, 275 Or. App. at 269 (cleaned up). "Improper means, for example, include violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation, and disparaging falsehood." *Church*, 190 Or. App. at 118 (quotation marks omitted). "[T]o be liable for elder financial abuse based on acts committed with an improper motive, the defendant's 'purpose must be to inflict injury on the plaintiff "as such."'" *Adelsperger v. Elkside Dev. LLC*, 322 Or. App. 809, 826 (2022) (quoting *Nw. Nat. Gas Co. v. Chase Gardens, Inc.*, 328

Or. 487, 498 (1999)). A defendant acting in "pursuit of its own business purposes as it saw them"

does not have an improper motive. *Top Serv. Body Shop v. Allstate Ins.*, 283 Or. 201, 212 (1978).

Under ORS § 124.110(1)(b), a plaintiff must allege that

> (1) the vulnerable person requests that another person transfer money to the vulnerable person; (2) the money requested to be transferred belongs to the vulnerable person; (3) the other person continues to hold the money or fails to take reasonable steps to make the money readily available to the vulnerable person; (4) the money was acquired from the vulnerable person; and (5) "the other person acts in bad faith, or knew or should have known of the right of the vulnerable person to have the money . . . transferred as requested or otherwise made available to the vulnerable person."

*Hoffart v. Wiggins*, 226 Or. App. 545, 549 (2009) (quoting ORS § 124.110(1)(b)).

Relevant to Lake's claim under ORS § 124.110(a), Lake alleges that Valais "wrongfully

appropriated approximately $277,000 in investment funds from Lake." SAC ¶ 82. These

allegations are sufficient to satisfy the first two elements of his claim of financial abuse of an

elderly person. Lake also alleges that he is over the age of 65, *id.* ¶ 81, and thus he qualifies as a

vulnerable person under Oregon law. Finally, Lake alleges that Valais made "fraudulent and

false statements of fact about the investment," and that individual Defendants who have since

been dismissed from this case "wrongfully used that investment money for the benefit of other

businesses that they owned." *Id.* ¶ 82. These allegations are insufficient to allege a wrongful act.

As discussed, Lake does not allege fraud with sufficient particularity. Therefore, Lake has not

sufficiently alleged a claim for elder financial abuse under ORS § 124.110(a).

With respect to Lake's claim under ORS § 124.110(b), Lake alleges that Valais

"wrongfully withheld $600,000 in funds from Lake owed in connection with his sale of his

membership interest in Valais." SAC ¶ 83. Lake alleges that he tendered his membership interest

back to Valais, *id.* ¶ 27, but does not specify when this tender occurred. These allegations do not

satisfy the requirement that "the money requested to be transferred belongs to the vulnerable

person." Unlike in *Hoffart*, where the plaintiffs merely entrusted money to the defendant to invest for them and had a contract requiring that "the entire sum of money be returned to plaintiffs upon their request," 226 Or. App. at 547, Lake invested in Valais and received a membership interest in return. Lake does not provide evidence of his agreement to invest in Valais and alleges only that he provided the investment "in exchange for his membership interest" in Valais. SAC ¶ 9. That Lake returned his membership interest does not mean that the $600,000 contract price is now money that belongs to him. Under such an interpretation, any entity that breaches a contract with a vulnerable person would be liable for financial abuse and treble damages. This is not a persuasive reading of the statute. The Court thus finds that Lake has failed to sufficiently allege his claim for elder financial abuse against Valais.

### 3. Sum of Money at Stake

The fourth factor, the sum of money at stake, counsels against granting default judgment. Lake seeks $1,680,000 in total damages, which is a significant amount when the defendants are not able to present a defense. *See HICA Educ. Loan Corp. v. Warne*, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) ("Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions.").

### 4. Disputed Facts

The fifth factor, whether there is a possibility of disputed material facts, weighs in favor of default judgment. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation marks omitted).

### 5. Excusable Neglect

The sixth factor also weighs in favor of default judgment: Lake properly served Acacia and Valais, and Acacia and Valais failed to obtain substitute counsel as ordered by this Court by the October 13, 2023, deadline, or any time thereafter. *See* ECF 68; ECF 80.

### 6. Judgment on the Merits

Finally, although the Ninth Circuit counsels that "[c]ases should be decided on their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, "this preference, standing alone, is not dispositive," *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). "Given [Acacia and Valais's] inexcusable failure to obtain new counsel and appear, a decision on the merits is impossible. This factor, therefore, weighs in favor of default judgment." *Mobilization Funding, LLC v. Halvorson Constr. Grp., LLC*, 2021 WL 4169162, at *4 (W.D. Wash. Sept. 14, 2021). On balance, the *Eitel* factors weigh in favor of default against Valais for breach of contract and violations of Oregon securities law, ORS §§ 59.055 and 59.115. Default is not justified against Acacia for breach of contract and against Valais for violations of Oregon securities law, ORS §§ 59.135 and 59.137, and elder financial abuse.

## B. Damages

Lake requests $240,000 in compensatory damages from Acacia and $1,440,000 in damages from Valais. Lake argues that Acacia and Valais are each liable to Lake for $600,000, the contractual amount, but that the Court should offset Lake's damages by the $360,000 that he has already received in settlement payments from the Defendants that have been dismissed.[5] *See*

---

[5] Lake seems to have calculated the $1,440,000 sought against Valais by tripling $600,000, because the elder financial abuse statute allows for treble damages, and then offsetting the result by the settlement amount already received. Because the Court finds that Lake has not sufficiently alleged elder financial abuse, Lake is not entitled to treble damages.

ECF 93-1 ¶ 9. "Such an offset is appropriate where there is joint and several liability . . . ." *Trujillo v. Ali*, 2016 WL 6902313, at *9 (E.D. Cal. Nov. 23, 2016) (citing *Velez v. Roche*, 335 F. Supp. 2d 1022, 1042-43 (N.D. Cal. 2004) (explaining that an offset may be awarded where the settlement and the award against which offset is sought were (1) for the same injury and (2) there is joint and several liability among the settling and non-settling defendants)). The Defendants here acted in concert and Lake's injury cannot be allocated to a particular defendant, and thus the Defendants are jointly and severally liable. The Court thus finds that this offset is appropriate, and Lake's remaining damages are $240,000.

Lake also requests prejudgment interest. When a plaintiff's claims arise under state law, as they do here, "[s]tate law generally governs awards of prejudgment interest in diversity actions." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). Thus, on the claims for which default judgment is supported, Lake is entitled to prejudgment interest at the Oregon statutory rate of nine percent per annum, for "[a]ll moneys after they become due." ORS § 82.010(1)(a). Lake seeks prejudgment interest from Valais beginning on November 19, 2019, which is the date of payment agreed to in the Promissory Note and therefore the date that the money became due. Accordingly, the Court grants this request.

## C. Attorney's Fees

Lake also requests attorney's fees of $91,748.00.[6] Attorney's fees are recoverable only if there is a contract clause or statutory basis. *See Am. Republic Ins. v. Union Fid. Life Ins.*, 470 F.2d 820, 826 (9th Cir. 1972). Such a basis is found in the Oregon securities statute, which states: "Except as provided in subsection (11) of this section [referring to class actions], the court

---

[6] Lake states in his declaration that he has incurred $91,748.00 in his attorney's fees to date, ECF 93-1 ¶ 9, but he does not provide evidence to support this amount or its reasonableness.

may award reasonable attorney fees to the prevailing party in an action under this section." ORS § 59.115(10). The Court thus grants Lake his reasonable attorney's fees on his securities law claim under ORS §§ 59.055 and 59.115.

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Lake's Motion for Default Judgment Against Defendants Valais Ventures, LLC and Acacia Systems, LLC (ECF 93). The Court grants default judgment against Valais on Lake's claims for breach of contract and violations of Oregon securities law, ORS §§ 59.055 and 59.115, in the amount of $240,000. The Court denies default judgment against Acacia on Lake's claim for breach of contract and against Valais on Lake's claims for violations of Oregon securities law, ORS §§ 59.135 and 59.137, and elder financial abuse. Lake is entitled to reasonable attorney's fees on his Oregon securities law claim and to prejudgment interest on his contract claim. Lake shall file a proposed form of judgment, including a calculation of prejudgment interest, and provide evidence of Lake's reasonable attorney's fees on his securities law claim within two weeks of the date of this Order.

**IT IS SO ORDERED.**

DATED this 4th day of February, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge